IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA )
)
)
Plaintiff, ) Case No.
vs. ) 14-00286-01-CR-W-GAF
)
ERIC KING, )
)
Defendant. )

CHANGE OF PLEA HEARING
BEFORE THE HONORABLE GARY A. FENNER
MARCH 3, 2016
KANSAS CITY, MISSOURI

APPEARANCES

For the Plaintiff: MR. PATRICK C. EDWARDS
United States Attorney's Office
400 East 9th Street
Kansas City, Missouri 64106

For the Defendant: MS. CARIE ALLEN
Federal Public Defender's Office
818 Grand Avenue
Kansas City, Missouri 64106

Gayle M. Wambolt, RMR, CRR
U.S. Court Reporter, Room 7552
Charles Evans Whittaker Courthouse
400 East Ninth Street
Kansas City, MO 64106 (816) 512-5641

THURSDAY, MARCH 3, 2016

THE COURT: Ready, Ms. Allen? Ms. Allen, are you ready?

MS. ALLEN: Yes, Your Honor.

THE COURT: Mr. King, would you please stand, raise your right hand, receive the oath from my clerk.

(Defendant sworn.)

THE COURT: Thank you. You can be seated.

Ms. Allen, would you scoot that microphone over so that Mr. King can speak into it.

First of all, Mr. King, do you understand that you're now under oath, and as a result of that, if you were to answer any of my questions falsely, those answers could later be used against you in yet another prosecution for perjury or making a false statement?

THE DEFENDANT: Yeah, I understand that.

THE COURT: Thank you.

EXAMINATION BY THE COURT:

Q Would you state your full name for me, please.

A Eric G. King.

Q And how old are you, sir?

A I'm 29 years old.

Q All right. And how far have you gone in school, Mr. King?

A College.

Q Are you currently under the influence of any drug or medication or alcoholic beverage of any kind?
A No, I'm not.
Q Have you been treated recently, Mr. King, for any mental illness or addiction to narcotic drugs of any kind?
A I have not been treated for either of those things.
Q Have you received a copy of the indictment which contains the charges that are pending against you in this case?
A Yes, I've received that.
Q And have you had an opportunity to review the charges against you as well as review and discuss your case in general fully with Ms. Allen as your attorney?
A I've discussed both those things with her fully, yeah.
Q And has Ms. Allen done everything that you've asked her to do as your attorney in this case?
A Yes.
Q Do you have any question, concern, or complaint regarding the legal advice or legal representation that Ms. Allen has provided for you?
A Not at this time.
Q And are you fully and totally satisfied with the legal representation Ms. Allen has provided for you to this point?
A I had my issues, but I think at this point we're good.
Q All right. So you've worked through those issues, have

you?

A They've been worked through.

Q All right. And you're satisfied at this point?

A Yes.

Q Mr. King, you entered into a plea agreement with the government in this case; is that correct, sir?

A That is correct.

Q I have an original copy of the plea agreement, and on page 14 of the plea agreement at the bottom of the page there's a signature line with your name typed under it and a signature on that line. Is that your signature on the plea agreement?

A I can't see that line, but this is the one you just received from me?

Q Right.

A Yes.

THE COURT: Ms. Allen, would you come up and get this original copy and take it back to Mr. King for me.

Q (BY THE COURT) Is that your signature on the bottom line, Mr. King?

A That's the one.

Q All right. Mr. King, did you have an opportunity to read the plea agreement and discuss the terms of the plea agreement with Ms. Allen before you signed it?

A Not as much time as I would have liked but, yeah.

Q Were there some matters of the plea agreement that you did not understand or that you do not understand at this time?

A There were small changes made last time, and so I wanted to make sure that those changes were what we thought they were going to be, that there was no surprises.

Q All right. And did you have an opportunity to satisfy yourself that the final plea agreement is in the form that you desire?

MS. ALLEN: Judge, I can make a very quick record that I think might assist in this. When we appeared in front of Judge Maughmer, we had a copy of a plea agreement that Mr. King was able to read through word for word. In this -- and I am holding a copy of that here, and I can assure the court this is the same, exact copy that he read before.

There were three sentences changed in this agreement in the factual basis. Two were at his request. There have been no other changes to the agreement from the one that he read before.

THE COURT: All right. So those changes were made to paragraph 3 of the plea agreement only?

MS. ALLEN: Yes, paragraph 3 only, and I did give Mr. King a copy of this agreement as soon as he came up. He just didn't have time to make it through all 14 pages, but he has read an exact copy before except for those three sentences in paragraph 3.

THE COURT: All right.

Q (BY THE COURT) Do you -- are you satisfied that what Ms. Allen says is true, Mr. King?

A Yeah, I'm satisfied with that.

Q And have you had an opportunity to look at those changes in the factual allegations set forth under paragraph 3?

A Yes.

Q Do you understand all the terms of the plea agreement?

A I do understand all the terms of the plea agreement.

Q And has anyone made any promise or assurance to you of any kind other than those contained in the plea agreement in an effort to cause you to enter a plea in this case?

A Would that include the threats of prosecution?

MS. ALLEN: They were dismissed but that's in the plea agreement.

A Okay. Then, no, they haven't.

Q (BY THE COURT) All right. And do you understand that the terms of the plea agreement, Mr. King, are merely recommendations to the court?

A I'm aware of that, yes.

Q And do you understand that the court could ultimately reject some or all of those recommendations and sentence you in a manner different than what you might anticipate under the terms of your plea agreement?

A Yeah, I understand that.

Q And do you understand that if that was to occur, that would not provide you with a basis to withdraw a plea of guilty?

MS. ALLEN: Judge, again, I just want to make sure this is clear because I don't want to have any trouble with the plea. I think the issue that might cause some difficulty is Count 3, as it reads in the plea agreement, does carry a mandatory maximum of ten years as well as a mandatory minimum of ten years.

The one thing that we have assured Mr. King that if the court does accept his plea agreement, that would be the mandatory maximum and minimum of that particular -- of that particular count; that there is no maximum higher than the ten year. And I just know that he wants to be assured that the court could not sentence him in excess of the statutory maximum based on this plea agreement.

THE COURT: Well, a sentence in excess of ten years would be illegal by statute.

You agree with that, Mr. Edwards?

MR. EDWARDS: I do, Your Honor.

THE COURT: And, Ms. Allen, you agree?

MS. ALLEN: Yes. That's just what we wanted to make clear.

Q (BY THE COURT) Okay. So do you accept, Mr. King, that pursuant to the terms of your plea agreement and also as

required by statute, if your plea is accepted in this case, you will be subject to a ten-year sentence?

A Yes. I'm aware of that.

Q All right. And do you feel that anyone has attempted in any way to force you to plead guilty in this case?

A No.

Q Is it your desire to plead guilty of your own free will because you are in fact guilty of the charges against you?

A It's my desire to plead guilty due to my own free will because I am guilty of the charges.

Q And do you understand that this is a felony offense?

A I do understand this is a felony offense.

Q Mr. King, do you understand that if your plea is accepted, you will be adjudged guilty and that you may thereby be deprived of valuable civil rights such as your right to vote, your right to hold public office, your right to serve on a jury, and your right to possess any kind of a firearm?

A I understand that my civil rights will be taken.

Q And we've already addressed the fact that if you enter a plea to this offense and your plea is accepted, you will be subject to a mandatory ten-year sentence, and you understand that; is that correct, sir?

A I do understand that.

Q And do you understand that you could also be assessed a fine of up to $250,000?

A (Witness nodded head.)
Q I'm sorry. You have to give a verbal response.
A I understand that I could be assessed a fine of $250,000.
Q And do you understand that upon your release from that period of incarceration, you could be required to serve a term of up to three years of supervised release?
A I am aware of the term of that.
Q And you understand that if while you were serving that term of supervised release it was to be revoked, that you could be returned to prison for up to the full term of your supervised release without being given any credit for the time that you had already served while you were under supervision?
A I understand that now.
Q In addition to all those matters, you understand that if your plea is accepted, you will be required to pay the government a special assessment in the amount of $100?
A I didn't understand that, but I do now.
Q All right. And do you understand that you could be required to pay restitution for any damages caused by your criminal conduct?
A I understand that now, yeah.
Q Mr. King, do you understand that if your plea is accepted, the United States Probation Office will prepare a presentence report, and when that report is completed, a

sentencing hearing will be scheduled at which time the court will determine the specific terms of your sentence?

A I understand that.

Q And do you understand that there are a number of statutory factors that the court must consider in determining an appropriate sentence, and that one of those factors will be the recommended range of punishment under the sentencing guidelines?

A Yes, I understand that.

Q And do you understand that in this case, the sentence is directed by law to be ten years?

A Yes.

Q Do you understand that the court will, nonetheless, go through the process of determining the application of the sentencing guidelines?

A Yes, I understand that.

Q And do you understand that if there are issues of fact that are in dispute between you and the government which must be decided by the court for the court to determine the proper application of the sentencing guidelines, those factual disputes will be decided by the court at the time of your sentencing hearing based upon the greater weight of the evidence presented?

A I don't understand what you just said at all, Your Honor.

Q Okay. The sentencing guidelines require determination by the court of how those guidelines are to be applied in each individual and specific case. Do you understand that?

A Yeah.

Q And so that process will be undertaken for that determination to be made in your particular case.

A Okay.

Q And there may be factual issues in dispute. There may be issues such as criminal convictions, whether those convictions are appropriately applied to you or not, whether the guidelines require some additional consideration because of a criminal conviction or some other issue that you may think that wasn't me, that conviction, I wasn't guilty of that. That was never assessed against me.

And if there was a dispute along those lines or any other factual issue, at the time of your sentencing hearing, the court would have to decide who was right, you or the government in terms of those respective positions? Do you understand that?

A I understand that, yeah.

Q All right. And in deciding those issues, the court will take into consideration the evidence presented and make a decision not to a standard of beyond a reasonable doubt but to a standard of the greater weight of the evidence presented. That would be the process if there are factual disputes.

A Okay.

Q And do you understand that in deciding any factual disputes, the court will take into consideration any information presented that the court determines to be reliable?

A Okay.

Q Do you understand that that could potentially include hearsay information?

A I do understand that.

Q And, Mr. King, do you understand that in the federal system there is no parole? Therefore, if you -- well, if you -- if the court determines that the ten-year sentence is the appropriate sentence, you will not be eligible to be released from prison prior to the expiration of that term on parole?

A Yeah, I understand that, Your Honor.

Q Do you understand that under the terms of your plea agreement, you agree to waive the right to appeal or collaterally attack, meaning challenge on any basis, including postconviction motion, a finding of guilt following acceptance by the court of your plea and plea agreement except on grounds of ineffective assistance of counsel or prosecutorial misconduct?

A I do understand that.

Q And do you understand that you have also waived the right to appeal the sentence that you receive either directly

or collaterally, and, again, collaterally meaning on any basis including postconviction motion except for claims of ineffective assistance of counsel, prosecutorial misconduct, or an illegal sentence?

A I understand that.

Q Mr. King, do you understand that you do have a right to maintain a plea of not guilty and to have a trial which could be by jury if it was your choice to do so?

A I'm aware of that.

Q And do you understand that if there was a trial, that at trial you would be presumed to be innocent and the government would be required to prove your guilt beyond a reasonable doubt?

A I understand that.

Q And do you understand that if there was a trial, you would have the following rights at trial: The right to the assistance of counsel for your defense, the right to see and hear all witnesses and have them cross-examined in your defense, the right on your own part to decline to testify or present any evidence unless you voluntarily chose to do so, and the right to have subpoenas issued to compel the attendance of witnesses to testify at your trial?

A I do understand that.

Q Do you understand if you were to decide at a trial not to testify or present any evidence, the government would not

be allowed to argue or use those facts or circumstances against you?

A I do understand that.

Q Mr. King, do you also understand that by entering a plea of guilty, if your plea is accepted, there will not be a trial and you will have waived or given up your right to trial as well as all of the other rights associated with the trial that we have just discussed?

A I understand I've given up my rights.

Q Mr. King, do you understand that if there was a trial in your case, the government would be required to prove at that trial that you knowingly used explosive materials which were an incendiary device to commit arson of property used in or affecting interstate commerce?

A Yes.

Q And do you understand the government would be required to prove that you did this on or about September the 11th of 2014, within the jurisdiction of this court, the Western District of Missouri?

A I'm aware of that.

Q And, Mr. King, we've already had a bit of discussion referencing the information provided in paragraph 3 of your plea agreement, which is a recitation of facts applicable to your case. Are all of the facts and information as set forth under paragraph 3 true and accurate?

A Yes.

THE COURT: Mr. Edwards, do you have any further record that you'd like to make regarding Mr. King's plea at the present time?

MR. EDWARDS: Judge, for purposes of Lafler and Frye, I would inform the court that there was a protracted negotiation process to get to this point today in this guilty plea. There was originally a formal plea agreement that was extended. Ms. Allen noted that there were a few minor changes made to paragraph 3, but this is the only formal offer that has been extended to the defendant.

THE COURT: All right. Thank you.

Ms. Allen, do you have anything further that you would like to make a record on at this point in time?

MS. ALLEN: Judge, the only thing we wanted to make an additional record on is that paragraph 21 does talk about the fact that this agreement, along with any supplemental or in camera agreements, are what are considered -- we just wanted to make a record that there were no in camera agreements in this particular case. There were no cooperation agreements or anything along those lines; that the agreements are all included in this written plea agreement.

THE COURT: All right. Thank you very much.

Q (BY THE COURT) Mr. King, to the charge of arson, and that charge is more fully and specifically set out under Count

3 of the indictment brought against you, how do you wish to plead?

A I will plead guilty.

THE COURT: Mr. King, I find that you're fully competent and capable of entering an informed plea. I find that you're aware of the nature of the charges against you and also aware of the consequences of your plea. I find that your plea is made knowingly and voluntarily; further, that it is supported by an independent basis in fact, which contains all of the essential elements of the offense charged against you. I, therefore, accept your plea and adjudge you guilty as charged.

As I referenced earlier, Mr. King, the probation office will now prepare a presentence report. When that's completed, we will schedule your sentencing hearing and you will appear in court here again at that time.

I'm going to order that you be retained in custody pending sentencing and final disposition.

Mr. Edwards, do you have anything further that needs to be taken up in this matter?

MR. EDWARDS: No, Your Honor.

THE COURT: Ms. Allen?

MS. ALLEN: Nothing further, Your Honor.

THE COURT: Thank you all.





Case 4:14-cr-00286-GAF Document 39 Filed 03/16/16 Page 16 of 17

REPORTER'S CERTIFICATE

I certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_______________     ________________________________

Date     Registered Merit Reporter